# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

NELISSA REYES COLON, <u>et al.</u>

    **Plaintiffs,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Defendants.**

**CIVIL NO. 18-1225 (PAD)**

## OPINION AND ORDER

Delgado-Hernández, District Judge.

    This is an action for damages against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680 ("FTCA"), arising out of a tragic traffic accident involving a school bus and a truck that Eagle Support, Inc. ("Eagle"), a contractor of the United States Postal Service, leased from a third party to transport mail for the Postal Service (Docket No. 2-1). Before the court is the "Federal Defendant's Motion to Dismiss" on jurisdictional grounds (Docket No. 12), which plaintiffs opposed (Docket No. 17). The government replied (Docket No. 19), and plaintiffs sur-replied (Docket No. 21). For the reasons explained below, the government's motion is GRANTED and the case DISMISSED.

## I.    DISCUSSION

    As a sovereign, the United States is immune from suit without its consent. <u>See</u>, <u>Evans</u> v. <u>U.S.</u>, 876 F.3d 375, 380 (1st Cir. 2017)(so recognizing). Absent a waiver "unequivocally expressed in statutory text," the court lacks subject matter jurisdiction over claims brought against the United States. <u>Marina Bay Realty Trust LLC</u> v. <u>U.S.</u>, 407 F.3d 418, 421 (1st Cir. 2005). The FTCA includes a limited waiver of immunity for injuries resulting from the negligent or wrongful

act or omission of any government employee while acting within the scope of his office or employment, but shields the government from liability based on a government employee's exercise or failure to exercise a discretionary function or duty. The government contends these aspects of the FTCA preclude liability here (Docket No. 13, pp. 2, 4).

   A.   <u>Independent Contractors</u>

   Because the waiver of sovereign immunity applies to the negligent acts or omissions of federal-agency employees, it does not extend to independent contractors. <u>See</u>, <u>United States</u> v. <u>Orleans</u>, 425 U.S. 807, 813-814 (1976)(discussing issue). A critical element in distinguishing a federal agency from an independent contractor is whether the government directs the manner in which the contractor carries out its obligations under the contract, supervising the contractor's day-to-day operations. <u>See</u>, <u>Brooks</u> v. <u>A.R. & S Enterprises, Inc</u>., 622 F. 2d 8, 10 (1st Cir. 1980)(so recognizing).

   Eagle provided services to the Postal Service through a Highway Contract Route agreement it had entered into with the Postal Service (Docket No. 13, pp. 2-3; Docket No. 13-2). Courts have recognized that drivers hauling mail under similar contracts are not Postal Service employees. <u>See</u>, <u>Estate of Anderson-Coughlin</u> v. <u>U.S.</u>, 2017 WL 6624020, *4 (D.Conn Dec. 28, 2017)(collecting cases); <u>Jones</u> v. <u>U.S.</u>, 2013 WL 2477288, *6 (S.D.Ind. 2013)(same). Plaintiffs, however, assert that various contract provisions lead to a different conclusion.

   First, plaintiffs maintain Eagle had no discretion as to how it performed its work on account of clauses pursuant to which it agreed to: (1) pick up and unload mail at a certain time each day; (2) perform additional service trips as needed within 4 hours of notification; (3) modify its delivery schedule as needed; and (4) use vehicles that meet certain technical specifications (Docket No. 17, pp. 2 & n.1, 11-12). These contractual requirements do not show the government directed Eagle's

day-to-day operations, for contractual reference to schedules and procedures does not erase an entity's independent contractor status. See, Carroll v. U.S., 661 F.3d 87, 99 (1st Cir. 2011)(finding independent contractor status even though the contract allowed the government to specify work schedules, frequencies and methods).

Second, plaintiffs posit the contract requires Eagle to maintain equipment that "present[s] a creditable appearance and compl[ies] with applicable Postal Service regulations" (Docket No. 17, p. 4); and that vehicles painted red, white and blue "must have inscribed on their doors in black letters at least one inch high the following words: 'United States Mail Contractor'" (Docket No. 17, p. 4). They state Eagle had to present equipment for inspection as instructed by the Postal Service (Docket No. 17, p. 16). They posit Eagle must submit government forms, background investigations, fingerprint cards, and color photographs for its employees to have access to postal facilities, the mail, or vehicles carrying U.S. mail (Docket No. 17, p. 4). And once those employees go through the screening process, the Postal Service issues "Non Postal Service Contractor Employee" badges (Docket No. 17, p. 4).

That the contract required Eagle to abide by certain standards in its hiring and vehicle maintenance or submit to inspections did not transform it into a federal agency. An independent contractor may be required to comply with "extensive regulations," guidelines and inspections without the contracting agency's "having the power to supervise the daily operation of the contractor." Orleans, 425 U.S. at 817-18 (finding that a community action agency was not a federal agency nor were its employees federal employees within the meaning of the FTCA, even though it had to comply with regulations, including employment policies and procedures, accounting and inspection procedures, expenditure limitations, and programmatic limitations); Brooks, 622 F. 2d at 12 (albeit contract required that contractor's guards be trained in accordance with a Navy

security manual and guards received security approval from a United States Naval Office before begin assigned to the base, the government's authority did not constitute control within the meaning of the FTCA); <u>Piñero</u> v. <u>Department of Housing and Urban Development</u>, 592 F. Supp. 2d 233, 237 (D.P.R. 2008)(the right to inspect does not nullify the general rule that the government is not liable for torts of independent contractors). Consequently, this level of oversight does not reach the level of day-to-day control and supervision that is required to demonstrate for FTCA purposes that a contractor is an employee. <u>See</u>, <u>Estate of Anderson-Coughlin,</u> 2017 WL 6624020 at *4 (so noting in applying formulation).

In like manner, the fact the Postal Service requires Eagle to identify itself as a "contractor" bolsters the conclusion that Eagle was not to be treated as a federal agency or employee, a finding confirmed by other contract provisions. To this end, the contract charges Eagle with a large degree of responsibility for its operations in a manner not usually required of an employee. It provides that Eagle, not the Postal Service, "shall be liable for the cost of all repairs to or maintenance of equipment furnished by the supplier under this contract…." (Docket No. 2-1, p. 20). It imposes upon Eagle the obligation to repair its vehicles and equipment (Docket No. 2-1, p. 20). It charges Eagle with the responsibility to inspect and load vehicles safely (Docket No. 2-1, pp. 21-22). And it requires Eagle to keep liability insurance on its vehicles (Docket No. 2-1, p. 22).

In this framework, contract clauses expressly assigning liabilities and safety responsibilities to the contractor support a finding that the contractor is an independent contractor. <u>See</u>, <u>Larsen</u> v. <u>Empresas el Yunque, Inc.</u>, 812 F.2d 14, 16 (1st Cir. 1986)(stating that corporation leasing restaurant on government property was an independent contractor because, among other things, it was required to indemnify the United States against liability for damage arising from the occupancy of the land, maintain "standards of repair… and safety acceptable to the forest officer

in charge," and secure property and personal injury or death insurance). Thus, the Postal Service did not exercise day-to-day control over Eagle's activities. See, Estate of Anderson-Coughlin, 2017 WL 6624020 at *4 (applying independent contractor provision to support dismissal of claim arising out of accident attributed to Postal Service contractor); Jones, 2013 WL 2477288 at *7 (similar).

B. Discretionary Functions

Plaintiffs claim the Postal Service is directly liable for having failed to properly fulfill the non-discretionary duty to inspect Eagle's vehicles (Docket No. 17, pp. 21-22). The FTCA has a "discretionary function" exception, which precludes "claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty. . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception is meant to prevent "judicial second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. U.S. v. Gaubert, 499 U.S. 315, 323 (1991). It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. Varig Airlines, 467 U.S. 797, 808 (1984).

In considering whether the exception applies, a court must: (1) identify the allegedly harmful conduct, (2) determine whether the conduct is discretionary, and (3) decide whether exercise of that discretion is susceptible to policy-related judgments. See, Carroll, 661 F. 3d at 100 (so stating)(citing in part Gaubert, 499 U.S. at 322-325)). Conduct is non-discretionary when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow, "because the employee has no rightful option but to adhere to the directive." Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988). By extension, plaintiffs' argument fails.

As the courts in <u>Estate of Anderson-Coughlin</u>, 2017 WL 6624020 at *5, and <u>Jones</u>, 2013 WL 2477288 at * 7 observed, "…we know of no federal statute or regulation which dictates the manner in which the Postal Service is required to oversee its contractors or assure that its contractors comply with federal regulations and the provisions of the [Highway Contract Route] contracts." Plaintiffs do not state otherwise. Instead, they direct the court's attention to the contract, a handbook, and a contractor's representative's statement.

First, plaintiffs mention Section 2.2.7 (b) of the contract, which provides in part that, "[a]ll equipment shall be presented for inspection at the location and time indicated by the contracting officer or authorized representative" and "[e]quipment used on the contract must at all times be maintained in a condition that reflects favorably on the Postal Service and is acceptable to the contracting officer or authorized representative for the full term of the contract and any subsequent renewals" (Docket No. 17, p. 3; Docket No. 3-2, p. 42). Yet the Section does not specify the conditions under which the Postal Service would have to inspect Eagle's vehicles, thus making a federal employee's determination to inspect discretionary. <u>See</u>, <u>Clark</u> v. <u>U.S.</u>, <u>Dept. of Army</u>, 805 F.Supp. 84, 88 (D.N.H. 1992) (finding that the discretionary function exception applied where a contract did not provide government with a detailed course of action to follow in its oversight role); <u>Doud</u> v. <u>U.S.</u>, 797 F.Supp. 138, 144 (N.D.N.Y. 1992)(noting that contract, which stated that the contractor "shall" oversee contractor's safety measures, did not "impose any mandatory obligations on the United States with respect to the method the Government's employees use to detect noncompliance…rather it l[eft] such determinations entirely to the discretion of the Government's employees").

Second, plaintiffs point to Section 43 of the vehicle inspection checklist contained in the Postal Service's handbook for highway contractor safety (Docket No. 17-3), which includes

"sample daily checklist for vehicle safety inspection." Id.  However, Section 13, which describes the scope of the handbook, expresses that it applies "to all leased and contracted vehicles engaged in Postal Service business" and not specifically to "vehicles owned by the Postal Service or Postal employees…."[1]  Given that the handbook itself applies to contractors, not the Postal Service, it does not support the theory that the government had a non-delegable duty to inspect Eagle's vehicles.  The responsibility of inspecting Eagle's vehicles ultimately rested on Eagle.

Third, plaintiffs rely on an Eagle representative's affidavit stating that "all drivers were required to carry out a full inspection of the vehicle before going on their routes" and that a Postal Service inspector "is supposed" to carry out "this type of inspection" (Docket No. 17, p. 7).  The statement does not show lack of discretion.  When an agency determines the extent to which it will supervise the safety procedures of private individuals, "it is exercising discretionary regulatory authority of the most basic kind."  Varig Airlines, 467 U.S. at 819-820.  A decision to charge a contractor with the responsibility to inspect vehicles while retaining the right to conduct additional inspections as well as the choice on whether, and to what extent, to opt for that alternative, are readily susceptible to a policy analysis.  Both "necessarily implicate balancing the allocation of limited resources against public safety considerations.  See, Jones, 2013 WL 2477288 at *7 (acknowledging that Postal Service decision to hire contractor "as well as subsequent decisions relating to the manner in which [it] supervised and monitored [contractor's] performance under the contract involve elements of judgment and choice").  So considered, the Postal Service's decisions in question fall within the discretionary function exception to the FTCA.  See, Estate of

---

[1] Plaintiffs only filed Section 43 as an exhibit in support of their opposition to the government's motion to dismiss.  The entire handbook can be accessed online at United States Postal Service, Handbook PO-515: Highway Contractor Safety (2010), http://about.usps.com/handbooks/po515.pdf.

Anderson-Coughlin, 2017 WL 6624020 at ** 1, 4-7 (applying discretionary function exception in dismissing action based on death resulting from collision with contractor's tractor trailer hauling U.S. mail); Jones, 2013 WL 2477288 at **1, 7-8 (same, with accident involving contractor's semi-truck with U.S. mail).

## II.  CONCLUSION

For the reasons stated, the court lacks subject matter jurisdiction to adjudicate plaintiffs' claim that the United States is vicariously liable for Eagle's negligence and/or directly liable for having negligently failed to inspect Eagle's vehicles.  Sovereign immunity is an immunity from suit, not merely immunity from liability.  With that in mind, the government's motion to dismiss (Docket No. 12) is GRANTED and the case DISMISSED.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of January, 2019.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge